IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENZO LIFE SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-88-SLR |
| | ) | |
| ADIPOGEN CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this ⅔8th day of June, 2011, having considered plaintiff's motion for temporary restraining order and preliminary injunction and the papers submitted in connections therewith;

IT IS ORDERED that, for the reasons that follow, the motion (D.I. 4) is denied.

1. **Background.** Plaintiff Enzo Life Sciences, Inc. ("ELS") is in "the business of developing, producing, marketing and selling life science research reagents, kits and products worldwide to scientific researchers in academia, clinical research and drug discovery." (D.I. 1 at ¶13) ELS has moved to enjoin defendants Adipogen Corporation, Adipogen International, Inc. (Adipogen International"), Bioaxxess, Inc. ("Bioaxxess"), George Chappuis ("Chappuis"), Tamara Sales ("Sales"), and Silvia Dettwiler (Dettwiler) (collectively the "defendants") from "continuing a wrongful and fraudulent scheme involving theft of ELS's products, intellectual property and confidential and trade secret information so as to establish a business to compete directly against ELS." (D.I. 5 at 1)

2. ELS alleges that, after Chappuis resigned as President of ELS AG in February 2010, various email messages and documents were discovered that detail an elaborate scheme orchestrated by Chappuis to "loot and disable ELS." (D.I. 5 at 5 ¶12) Specifically, beginning in May 2007, ELS paid approximately $16 million to purchase a company known as Axxora Life Sciences, Inc. ("Axxora") and its five subsidiaries pursuant to a stock purchase agreement ("the Agreement").[1] (D.I. 7 at ¶¶4-12) As part of the Agreement, defendants agreed that they would not compete or use confidential information of the acquired companies. ELS hired Chappuis, Sales and Dettwiler to operate the acquired companies and to assist in ELS's operations. Instead of working on behalf of ELS, however, defendants breached the Agreement, stole ELS's business products, trade secrets, confidential information and set up competing companies using information and money stolen from ELS. As a result of these machinations, ELS asserts that defendants established a new company (Adipogen International) set to open for business on February 15, 2011 and to directly compete with ELS. Without immediate injunctive relief, ELS argues that severe and irreparable injury will result.

3. Defendants contest ELS's account of the events at issue. (D.I. 14, 15, 16)

---

[1] According to the verified complaint ("the complaint"), Chappuis, a selling shareholder under the Agreement, was the President and CEO of Axxora at the time of ELS's acquisition of Axxora. (D.I. 1) After the acquisition, Chappuis was named President and Director of Alexis, which was later renamed ELS AG. Sales, a signatory to the Agreement, served as Chief Financial Officer of Axxora and Axxora LLC. After the acquisition of Axxora, Sales was named President of Finance and Administration for ELS and was appointed to the Board of Directors of Alexis/ELS AG and Axxora UK. Sales is currently the Chief Financial Officer of Adipogen International and the Chief Financial Officer of Bioaxxess. (D.I. 16 at ¶2) Dettwiler, a selling shareholder under the Agreement, served as Deputy President under Chappuis and Vice President of Operations Europe and as a member of the Board of Directors at ELS AG. (D.I. 1 at ¶20)

2

Significantly, defendants aver that Adipogen International has no immediate plans to enter into a business that competes with ELS and, instead, has been operating since June 2010 with no plans to launch on February 15, 2011. (D.I. 16) Defendants assert emergency relief is unwarranted because there are no exigent circumstances that require immediate relief and there is no threat of irreparable harm.

4. On March 7, 2011, defendants[2] answered the complaint, essentially denying the allegations. (D.I. 27) Although a scheduling order is not in place, ELS served defendants with its first request for production of documents on June 6, 2011. (D.I. 34)

5. **Standard of review.** Traditional rules of equity apply to requests for injunctive relief. See eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." Id. The grant of a preliminary injunction is considered an "extraordinary remedy" that should be granted only in "limited circumstances." See Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted).

6. The moving party for injunctive relief must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Id. (citation omitted). The burden lies with the movant to establish every element in its favor or the grant of a preliminary injunction is inappropriate. See P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005). If either or

---

[2]All defendants, except Dettwiler, filed an answer on this date. Dettwiler answered on May 26, 2011. (D.I. 34)

3

both of the fundamental requirements – likelihood of success on the merits and probability of irreparable harm if relief is not granted – are absent, an injunction cannot issue. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

7. **Discussion.** The record reflects two very different accounts of complicated business transactions among numerous companies commencing in 2007 through May 2010. Although ELS maintains that the emails and documents discovered after Chappuis' resignation unequivocally demonstrate that defendants acted improperly, breached the Agreement and generally schemed to destroy ELS to their benefit, the court finds these issues are in dispute and would benefit from the exchange of discovery and motion practice. Further, even assuming that defendants were planning to launch Adipogen International to compete against ELS on February 15, 2011, this date has long passed and there is nothing of record to reflect that any irreparable harm has occurred. To that end, although ELS has asserted irreparable harm, it has not presented any particular information with respect to the amount of business that would be diverted or identified losses sustained if injunctive relief were denied. Any losses identified during the discovery process could be addressed at later stages in the litigation with the award of money damages.

<br>

                                                                                                     _____
United States District Judge