IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**ENZO LIFE SCIENCES, INC.,**
a New York corporation

                              Plaintiff;

                    v.                              Civil Action No. 1:11-cv-00088-RGA

**ADIPOGEN CORPORATION,**
a California corporation, et al.,

                              Defendants.

MEMORANDUM OPINION

Joseph Benedict Cicero, Esq. (argued), Cousins Chipman & Brown LLP, Wilmington, DE;
Adam Cole, Esq. (argued), Cousins Chipman & Brown LLP, New York, NY, Attorneys for the
Plaintiff.

John Leonard Reed, Esq. (argued), DLA Piper LLP, Wilmington, DE; James W. Weller, Esq.
(argued), Nixon Peabody LLP, New York, NY, Attorneys for the Defendants.

November 20 , 2013

ANDREWS, UNITED STATES DISTRICT COURT:

Presently before the Court for disposition is Defendants Adipogen, Corp., et. al.'s Motion
to Disqualify Cousins Chipman & Brown, LLP as counsel to Plaintiff. (D.I. 117). This matter
has been fully briefed (D.I. 118, 123, 126, 136, 137) and the Court held oral argument on
September 12, 2013. (D.I. 138, hereinafter "Tr."). For the reasons set forth herein, the
Defendants' motion is **GRANTED**.

## BACKGROUND

On January 27, 2011, Plaintiff commenced this action against Defendants. (D.I. 1).
Defendants retained the San Diego office of DLA Piper to serve as lead counsel and hired Mr.
Reed of Edwards Angel Palmer & Dodge ("EAPD") as local counsel. (D.I. 14). DLA Piper's
San Diego office resigned from the case due to their involvement in the underlying dispute, and
Defendants in turn retained Mr. Ortego and Ms. Lukeman of Nixon Peabody in March 2011 to
serve as lead counsel. (D.I. 27). Subsequently, Mr. Reed, along with other attorneys from
EAPD, joined DLA Piper and continued as local counsel for the Defendants. (D.I. 123 at 7).

As part of DLA Piper's representation of the Defendants, the firm had Attorney Paul
Brown work on Defendants' case. Mr. Brown logged the following hours:

- October 5, 2011 – Mr. Brown participated in a forty-minute long mediation
  teleconference with Magistrate Judge Burke;

- November 29, 2011 – Mr. Brown spent over two and a half hours reviewing and editing
  the *ex parte* mediation statement and discussing it with Mr. Reed and Mr. Avello;

- December 1, 2011 – Mr. Brown spent 45 minutes speaking with and writing to Mr.
  Cicero regarding the mediation;

- December 2, 2011 – Mr. Brown spent over an hour and a half again speaking to Mr.
  Cicero regarding the mediation and other issues;

2

- December 14, 2011 – Mr. Brown spent another four hours on the *ex parte* mediation statement;

(D.I. 126 at 5; Tr. 5). Furthermore, Mr. Brown signed a notice of service on September 15, 2011

(D.I. 51), a stipulation and proposed order on December 5, 2011 (D.I. 60), a response to a motion

for the application for the issuance of letters of request for the production of documents of a third

party in Switzerland on December 19, 2011 (D.I. 65), a declaration in connection with the

aforementioned response on December 19, 2011 (D.I. 66), and a stipulation and proposed order

on December 23, 2011 (D.I. 67). Mr. Brown then withdrew his appearance from the case on

January 6, 2012. (D.I. 69).

Then on April 23, 2013, near the close of fact discovery (D.I. 108), Plaintiff's counsel

withdrew. (D.I. 110). The Law Firm of Cousins Chipman & Brown, of which Mr. Brown is a

named partner, entered its appearance on May 3, 2011. (D.I. 111). The firm notified Defendants

of Mr. Brown's conflict and that an ethical screen would be imposed. The procedures of the

screen were:

> The following procedures are being employed by Cousins Chipman & Brown, LLP (the "Firm") with respect to the *Enzo life Sciences, Inc. v. Adipogen Corp., et al.* matter pending in the United States District Court for the District of Delaware (the "matter") and **MUST BE FOLLOWED** by all lawyers and personnel of the firm.
>
> (1) No lawyer or other personnel of the firm is permitted to communicate with Paul Brown relating to the matter.
>
> (2) Paul Brown shall not have access to any files or other information relating to the Matter, including information in electronic form.
>
> (3) All files or information related to the Matter shall be maintained in designated file drawers, clearly labeled to indicate that access by Paul Brown is forbidden.
>
> (4) All files or information related to the Matter stored electronically on the Firm's server shall be stored in a specifically designated folder, and only lawyers and

> personnel of the Firm assigned to work on the Matter shall have access to such folder.

(D.I. 123-3 at 2 (emphasis in original)).  Furthermore, Mr. Brown signed an "Acknowledgment

of Ethical Screening and Undertaking."  This "Acknowledgment" stated:

> I, Paul D. Brown, hereby acknowledge my ethical obligation not to communicate with any lawyer or other personnel within Cousins Chipman & Brown, LLP (the "firm") who are working on the *Enzo Life Sciences, Inc. v. Adipogen Corp., et. al.* matter (the "Matter") with respect to the Matter.

> I hereby undertake to avoid (i) any communication with any lawyers or personnel of the Firm relating to the Matter and (ii) any contact with any files or other information of the Firm, including information in electronic form, relating to the matter.

(D.I. 123-3, at 4 (italics in original)).  Defendants rejected the ethical wall and Cousins Chipman

& Brown declined to withdraw.

## DISCUSSION

### A. Legal Standard

The Court has the "inherent authority to supervise the professional conduct of attorneys

appearing before it."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  Included is

the power to disqualify an attorney from a case.  *Id.*  Whether disqualification of an attorney is

warranted is determined by the ethical standards in the Court before which the attorney appears.

*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984).  As per Local Rule

81.6(d), "all attorneys admitted or authorized to practice before [the District Court of Delaware].

. . shall be governed by the Model Rules of Professional Conduct of the American Bar

Association. . . . " ("Model Rules").

The Model Rules provide that:

> A lawyer who has formerly represented a client in a matter shall not thereafter

4

represent another person in the same or a substantially related matter in which that
person's interests are materially adverse to the interests of the former client unless
the former client gives informed consent, confirmed in writing.

Model Rules R. 1.9(a). Rule 1.9 "is a prophylactic rule to prevent even the potential that a

former client's confidences and secrets may be used against him." *In re Corn Derivatives*

*Antitrust Litig.*, 748 F.2d at 162. "[T]he rule is important for the maintenance of public

confidence in the integrity of the bar." *Id.* Therefore, "any doubts which the court may have

regarding the appropriateness of disqualification should be resolved in favor of disqualifying the

former counsel and, thus, preserving the confidences of the former client." *INA Underwriters*

*Ins. Co. v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984) (not a Model Rules case).

However, the Court is also mindful of "a litigant's right to counsel of its choice" and therefore

"approaches [this motion] with careful scrutiny." *Intellectual Ventures I LLC v. Checkpoint*

*Software Technologies Ltd.*, 2011 WL 2692968, *6 (D. Del. June 22, 2011) (internal citations

and quotation marks omitted).

An attorney's own conflicts are imputed to the firm at which she/he works unless certain

requirements are met. Model Rules R. 1.10(a). If the conflict arises from an attorney's work at a

prior firm, the conflict will be imputed to the firm unless:

(i) the disqualified lawyer is timely screened from any participation in the matter
and is apportioned no part of the fee therefrom;

(ii) written notice is promptly given to any affected former client to enable the
former client to ascertain compliance with the provisions of this Rule, which shall
include a description of the screening procedures employed; a statement of the
firm's and of the screened lawyer's compliance with these Rules; a statement that
review may be available before a tribunal; and an agreement by the firm to
respond promptly to any written inquiries or objections by the former client about
the screening procedures; and

(iii) certifications of compliance with these Rules and with the screening

5

procedures are provided to the former client by the screened lawyer and by a
partner of the firm, at reasonable intervals upon the former client's written request
and upon termination of the screening procedures.

*Id.* at R. 1.10(a)(2). The firm seeking to employ the ethical screen bears the burden to show

compliance with Rule 1.10(a)(2). *Norfolk S. Ry. Co. v. Reading Blue Mountain & N. Ry. Co.*,

397 F. Supp. 2d 551, 554 (M.D. Pa. 2005).

### B. Decision

There is no dispute that Mr. Brown is disqualified, as per Model Rule 1.9.[1] The only

question before this court is whether the law firm has complied with Rule 1.10(a)(2). Cousins

Chipman & Brown has not met its burden to establish compliance with Rule 1.10(a)(2) as the

firm has failed to properly establish an effective screen and has not established that no part of the

fee received from Enzo Life Sciences will be apportioned to Mr. Brown.[2]

*Ethics Screen*

The Model Rules of Professional Conduct Rule 1.10(a)(2)(i) requires that the disqualified

attorney be "screened from any participation in the matter." The Model Rules further define the

term "screened" as "denot[ing] the isolation of a lawyer from any participation in a matter

through the timely imposition of procedures within a firm that are reasonably adequate under the

circumstances to protect information that the isolated lawyer is obligated to protect. . . ." Model

Rules R. 1.0(k). In determining whether a screen is adequate a court looks to several factors:

"(1)  The substantiality of the relationship between the attorney and the former client,

(2)  The time lapse between the matters in dispute,

---

[1] Cousins Chipman & Brown's letter to DLA Piper that the law firm had screened Mr. Brown is sufficient evidence
that he has a concurrent conflict with this case. The Plaintiff has provided no briefing or argument to contest this
finding.

[2] There is no dispute that the notice of the screening was provided timely, as per Rule 1.10(b)(i). Further, no

(3) The size of the firm and the number of disqualified attorneys,

(4) The nature of the disqualified attorney's involvement, and

(5) The timing of the wall."

*Holcombe v. Quest Diagnostics, Inc.*, 675 F. Supp. 2d 515, 519 (E.D. Pa. 2009). Furthermore,

the screen must:

(1) Prohibit discussion of sensitive matters,

(2) Restrict circulation of sensitive documents,

(3) Restrict access to files, and

(4) Create a strong firm policy against breach, including sanctions, physical and/or
geographical separation.

*Norfolk S. Ry. Co.*, 397 F. Supp. 2d at 554.

A careful balancing of all of these factors indicates that Cousins Chipman & Brown's

ethical screen is not adequate to satisfy the requirements of Model Rule 1.10(a)(2). First, the

nature of the Mr. Brown's involvement favors disqualification. Plaintiff argues that Mr. Brown's

role rises only to "collaboration with Nixon's junior associate who may have drafted

documents." D.I. 123 at 22. However, Mr. Brown aided in drafting two confidential *ex parte*

mediation statements that included information only known to the Defendants' counsel. (D.I.

119-2, at 3). The mediation statements should have complied with Magistrate Judge Burke's

guidelines in regard to content, and would have included "an honest discussion of the strengths

and weaknesses of the party's claims and/or defenses," as well as the defendant's "proposed

term(s) for a resolution." Magistrate Judge Christopher J. Burke, *Mediation*, UNITED STATES

component of Rule 1.10(b)(ii) or (iii) is in contention. Therefore, this court will not further address them.

7

DISTRICT COURT, DISTRICT OF DELAWARE (last accessed Nov. 7, 2013),

http://www.ded.uscourts.gov/judge/magistrate-judge-christopher-j-burke. Mr. Brown also

participated in and debriefed the mediation teleconference with Magistrate Judge Burke. (D.I.

126 at 5; Tr. 5). Furthermore Mr. Brown signed at least four separate documents for this case,

including letters of request for production of documents. (D.I. 60, 65, 66, 67). While Mr. Brown

may now have a "limited recollection" of this case, at the time he was working on the case he

surely was aware of the defense strategies. As per the Federal Rules of Civil Procedure Rule 11,

"[b]y presenting to the court . . . paper[s]. . . an attorney. . . certifies that to the best of the

*person's knowledge*, information, and belief, formed after an *inquiry reasonable under the*

*circumstances*. . . the claims, defenses, and other legal contentions are warranted . . . [and] the

factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b). While Mr. Brown

played significantly less than a pivotal role, he was nevertheless an active litigator in the case.

This factor weighs for disqualification.

The substantiality of the relationship between Mr. Brown and the Defendants weighs in

favor of disqualification. Here, while the Plaintiff contends that Mr. Brown played only a trivial

role at DLA Piper and thus could not satisfy this requirement (D.I. 123 at 21), Mr. Brown was an

attorney of record for the Defendants and is now a named partner at Cousins Chipman & Brown.

Mr. Brown's name is featured prominently on the letterhead of document submissions and as a

footer to firm email. (D.I. 123-3 at 8, 18). This letterhead and footer has already been used by

Cousins Chipman & Brown and would likely continue to be used, thereby creating a constant

appearance of a continuing imputed conflict. Therefore this factor weighs in favor of

disqualification.

8

The size of the firm favors disqualification. Cousins Chipman & Brown is composed of only eight attorneys. "[C]ourts analyzing this factor have considered a firm's small size to be a detriment rather than an asset in implementing an effective screen." *Dworkin v. Gen. Motors Corp.*, 906 F. Supp. 273, 280 (E.D. Pa. 1995). For instance, the Court in *Decora* found that an office of approximately 44 attorneys was too small to allow for an effective screen. *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 140 (S.D.N.Y. 1995).

Several factors weigh against disqualification. First, Cousins Chipman & Brown timely screened Mr. Brown and Mr. Brown has acknowledged his ethical responsibilities towards his previous client. (D.I. 123-3 at 4, 8). Second, Cousins Chipman & Brown has put in place procedures preventing Mr. Brown from electronically accessing the case files and has segregated the physical case files. *Id.* at 2. Third, no person at Cousins Chipman & Brown are permitted to speak to Mr. Brown regarding this case. Fourth, Mr. Brown is the only disqualified attorney at the law firm.

However, despite the steps that Cousins Chipman & Brown has taken, several key aspects of an appropriate screen are needed. First, while the screen indicates that employees of Cousins Chipman & Brown may not speak *to* Mr. Brown regarding the matter, there is no prohibition regarding discussing the matter in the presence of Mr. Brown, or in locations from which Mr. Brown could still hear the conversations. (D.I. 123-3 at 2). The lack of this prohibition is important because the small size of Cousins Chipman & Brown makes such conversations likely. Second, the screen provides no enforcement mechanism, and no warning to employees as to what would occur if the screen were not followed. *Id.* "An effective screen should have a 'strong firm policy against breach, including sanctions, physical and/or

9

geographical separation.'" *Norfolk S. Ry. Co.*, 397 F. Supp. 2d at 555 (quoting *Dworkin*, 906 F.

Supp. at 279). Here, the screen merely states that the procedures "**MUST BE FOLLOWED.**"

(emphasis in original). Indicating that something "must" be done establishes the law firm's

expectations, but does not measure up as a "strong firm policy." For example, in *Dworkin*,

where the court found the screen to be sufficient, the screen policy stated, "There is an absolute

prohibition of any conversations with, around, near, or in the presence of the screened attorney

concerning or relating to the screened files, and/or matters. Any employee who violates this

policy will be terminated and will be subject to disciplinary proceedings." *Dworkin*, 906 F.Supp

at 279. Conversely, in *Norfolk*, the screen was found not to be sufficient, because it stated, "All

personnel of this law firm are under strict written instruction not to discuss or reference any

matter involving [the case] with [the individual being screened]." *Norfolk S. Ry. Co.*, 397 F.

Supp. 2d at 555. Cousins Chipman & Brown's screen is similar to the screen in *Norfolk* and is a

far cry from the screen in *Dworkin*. Furthermore, while Mr. Cicero sent a reminder email to

employees, that if they were found to have violated the screen, they "w[ould] be disciplined,

which could include termination for cause," the emails neither sought to amend the official

screening procedures, nor are they sufficient to create a strong firm policy. (D.I. 123-3 at 18).

Balancing all of the aforementioned factors, the Court finds that as a whole the factors

weigh in favor of disqualifying Cousins Chipman & Brown as Defendant's counsel.

### *Apportionment of the fee*

Cousins Chipman & Brown has not satisfied the Court that Mr. Brown will not be

apportioned any of the fee. Rule 1.10 requires that for a firm to cure the imputation of an

attorney's conflict of interest on the firm the attorney must be "apportioned no part of the fee."

10

Model Rules R. 1.10(a)(2)(i). Furthermore, the comments to the rule state that the rule "does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified." *Id.* at R. 1.10 cmt. 8. Cousins Chipman & Brown has submitted that the "partners agreed at the end of 2012 on each partner's share of profits, if any for the 2013 year. No partner is provided any direct compensation from this or any other . . . matter."[3] (D.I. 123-4 at 1). Despite this statement, no evidence was provided to the Court to assess whether Cousins Chipman & Brown has sufficient funds, considering the firm's small size, to satisfy the firm's partner share agreement without any of the funds from this case being used to pay Mr. Brown's share. While the court is mindful that Mr. Brown's partnership share would not fluctuate based upon the success of their client, D.I. 137 at 4, because of the nature of a small firm it is likely that his actual pay would be affected.

The Plaintiff has not provided sufficient evidence to show that Mr. Brown would be "apportioned no part of the fee" from Cousins Chipman & Brown's representation of Enzo, and as it is Plaintiff's burden, this factor alone warrants disqualification.

### *Prejudice*

"[E]thical rules should not be blindly applied without consideration of the relative hardships." *Intellectual Ventures*, 2011 WL 2692968 at *14 (internal citation and quotation marks omitted). The Court is therefore mindful that "in order to make such a momentous decision as to deny a party its chosen counsel, it is proper to consider the equities." *Id.* After

---

[3] I take the representation to mean that each of the partners will get some *pro rata* share of the overall profits. It follows that Mr. Brown will get a *pro rata* share of the *Enzo* litigation. It may be by prior agreement, but it has exactly the same effect as if he is getting direct compensation from the *Enzo* litigation. If the firm followed a "eat what you kill" approach, then I think Mr. Brown would be apportioned no part of the fee. That, however, is not

11

appropriately weighing the equities, the Court finds that the equities favor the disqualification of Cousins Chipman & Brown.

The Defendants contend that the Plaintiff will not be prejudiced because "there is no shortage in Delaware of experienced corporate litigation counsel available to represent [the] Plaintiff. . . ." (D.I. 118 at 15). The Plaintiff contends it would be prejudiced because Cousins Chipman & Brown "w[ere] able to respond efficiently and cost-effectively in the short period prior to expiration of discovery given one of its lawyers prior involvement in the case." (D.I. 123 at 25). While Enzo's choice of counsel is entitled to consideration, the Plaintiff has provided no evidence that it would be unable to find alternate counsel or that it would be unduly burdensome to do so. Furthermore, while this motion is brought late in the litigation cycle, the motion itself was timely and the fact that Plaintiff's attorney withdrew late in the case does not provide cause to violate Rule 1.10, even if it may be more efficient or cost-effective to do so.

Conversely, the Plaintiff contends that the Defendants "offer no concrete prejudice. . . ." (D.I. 123 at 25). However, as the Defendants point out, even after the Defendants requested that any "substantive discussions about the case be held off until the Court provided guidance with respect to the conflict-of-interest. [The] Plaintiff . . . moved to compel disclosure. . . ." (D.I. 118 at 15). The Defendants have now had to spend time and money not only bringing the instant motion, but also responding to discovery requests when such discovery requests would, if this Court found disqualification appropriate, further harm the Defendants.

Finally, this Court has a strong interest in preserving the integrity of the judicial system. "In order for our adversarial system to function properly, clients must feel confident that they can

---

what the law firm is doing.

divulge all relevant information to their attorneys, without fear that such confidences will eventually be used against them in a later, related matter." *Intellectual Ventures*, 2011 WL 2692968 at \*14. This is even more true here, as here the use is in the same matter. This court must protect against even the appearance of impropriety.

## CONCLUSION

For the reasons above, the Court will **GRANT** Defendants' motion (D.I. 117) to disqualify Cousins Chipman & Brown. An appropriate order will be entered.