IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENZO LIFE SCIENCES, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ADIPOGEN CORPORATION, a California corporation, ADIPOGEN INTERNATIONAL, INC., a Delaware corporation, BIOAXXESS, INC., a Delaware corporation, GEORGES CHAPPUIS, an individual, TAMARA SALES, an individual, SILVIA DETTWILER, an individual, and DOES 1 through 50<br><br>Defendants. | Civil Action No. 11-00088-RGA |

MEMORANDUM ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment. (D.I. 149). At the pretrial conference on June 20, 2014, the Court denied the majority of Defendants' motion except for three of Defendants' contentions, including Defendant's claim that Defendant Silvia Dettwiler was released from all claims against her. (D.I. 159 (hereafter "Tr.") at 4; D.I. 151 at 12). The Court ordered Plaintiff to respond to the portion of the Defendants' motion addressing whether Dettwiler had been released from all claims against her. (Tr. at 4; D.I. 156 at 2). On July 25, 2014, the Court ordered Defendants to submit a letter clarifying the impact of Swiss law on the release. (D.I. 160). Plaintiff was permitted, but not required, to respond. *Id.* This matter has now been fully briefed. (D.I. 151; D.I. 157; D.I. 163; D.I. 170). For the reasons set forth, the portion of Defendants' Motion for Partial Summary Judgment regarding the claims against Dettwiler is **DENIED**.

1

## I. Background

Plaintiff Enzo Life Sciences, Inc. ("Enzo") brought this action in January 2011 against Defendants Adipogen Corporation, Adipogen International, Inc., and Bioaxxess, Inc., Georges Chappuis, Tamara Sales, and Silvia Dettwiler (collectively "Defendants") (D.I. 1). Enzo is a New York corporation in the business of producing, marketing, and selling research and diagnostic technologies and products. (D.I. 1 at 5; D.I. 155, Ex. A at 2). In a stock purchase agreement signed on May 29, 2007 (the "Stock Purchase Agreement"), Enzo acquired Axxora Life Sciences, Inc., a manufacturer and marketer of research products, and its five subsidiary companies. (D.I. 155, Ex. A at 5; D.I. 1 at 11). Included in the acquisition was Alexis Corporation, a Swiss subsidiary later renamed Enzo Life Sciences AG ("ELS AG"). (D.I. 155, Ex. A at 5; D.I. 1 at 2). Enzo alleges that sometime shortly after the acquisition, Sales, Chappuis, and Dettwiler, officers of Axxora and Alexis, and their co-conspirators established a competing company, Bioaxxess, Inc. (D.I. 1 at 26-27). Enzo alleges that the Defendants breached the non-compete clause contained in the Stock Purchase Agreement and committed other tortious acts. *Id.* at 40-55.

Ms. Dettwiler, a Swiss citizen, was the Deputy President and Vice President of Operations Europe at ELS AG, a member of its Board of Directors, and a selling shareholder under the Stock Purchase Agreement. (D.I. 155, Ex. A at 4-5; D.I. 1 at 8). Enzo has brought claims against Dettwiler for breach of contract, aiding and abetting Chappuis's breach of fiduciary duty, misappropriation of trade secrets, conversion, unfair competition, tortious interference with contract and business relations, unjust enrichment, and civil conspiracy. (D.I. 1 at 40-41, 45-55).

Enzo alleges that, in the Stock Purchase Agreement, Dettwiler agreed that she would not compete with Enzo, solicit customers, nor use Enzo's confidential information for her own benefit for a period of two years. *Id.* at 2. On July 1, 2007, Dettwiler entered into an employment

2

agreement with Alexis (the "Employment Agreement"). (D.I. 158, Ex. A at 2). The Employment Agreement also contained a non-compete provision that prohibited Dettwiler from competing with Enzo or any affiliate. *Id.* at 6-7. On July 29, 2010, Dettwiler terminated her employment with ELS AG. (D.I. 155, Ex. A at 5). On October 7, 2010, Dettwiler and ELS AG entered into an Agreement Regarding Dissolution of Employment Relationship (the "Dissolution Agreement"). (D.I. 152, Ex. C). The Dissolution Agreement released Dettwiler from the non-competition clause in the Employment Agreement. *Id.* at 5.

## II. Legal Standard

### A. *Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support such an assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in

3

that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable [fact finder] to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## B. *Contract Construction*

The construction of a contract is a question of law for the court to decide. *Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 565 (D. Del. 1993) (citing *Klair v. Reese*, 531 A.2d 219, 222 (Del. 1987)). In a diversity action, a federal court must apply the conflicts of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "In Delaware, when there is no reference to the choice of law in a contract, courts apply the 'most significant relationship' test articulated in [§188] of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS to resolve conflict issues arising out of the interpretation and validity of contracts." *Cohen v. Formula Plus, Inc.*, 750 F. Supp. 2d 495, 501 (D. Del. 2010); *see also Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del. 1991). To determine the forum with the most significant relationship, the court must consider: the place of contracting; the place of negotiation; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Cohen*, 750 F. Supp. 2d at 501 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971)).

4

### III. Discussion

The initial burden is on Defendants to demonstrate that as a matter of law the Dissolution Agreement released Dettwiler from the claims asserted against her by Enzo. Defendants have not met that burden.

#### A. *Swiss Law Governs the Interpretation of the Dissolution Agreement*

The Dissolution Agreement is silent on choice of law. (D.I. 152, Ex. C). Delaware conflict of law principles require that the Dissolution Agreement be construed under Swiss law. Dettwiler is a citizen of Switzerland, and ELS AG is a Swiss corporation. (D.I. 155, Ex. A at 4). Dettwiler was employed by ELS AG in Switzerland. *Id.* at 4-5. The Dissolution Agreement was executed in Switzerland and concerned the subject of the prior Employment Agreement, which expressly provided that Swiss law governed the Employment Agreement. (D.I. 152, Ex C at 4-5; D.I. 158, Ex. A at 9). Accordingly, Switzerland has the most significant relationship to the Dissolution Agreement. Therefore, Switzerland's laws govern the interpretation and validity of the Dissolution Agreement.

#### B. *Defendants' Arguments for Summary Judgment*

Defendants essentially make two arguments regarding the Dissolution Agreement. First, Defendants assert that the Dissolution Agreement must be interpreted broadly, thus releasing Dettwiler from all future claims, including tort claims, by ELS AG and its parent company Enzo. (D.I. 151 at 12-13). Second, Defendants assert that neither Enzo nor ELS AG properly rescinded of the Dissolution Agreement under Swiss law. (D.I. 151 at 13; D.I. 163 at 1).

#### C. *Analysis*

Regarding the first argument, Defendants have not provided sufficient evidence for the Court to determine the intent of the parties and the proper interpretation of the contract as a matter of

5

Swiss law. The only parties to the Employment Agreement were Dettwiler and Alexis, later renamed ELS AG. (D.I. 158, Ex. A at 2). The only parties to the Dissolution Agreement were Dettwiler and ELS AG. (D.I. 152, Ex. C at 4). Paragraph 5 of the Dissolution Agreement states that, "Enzo Life Sciences shall release Ms. Silvia Dettwiler from the *non-competition clause stipulated in the employment agreement.*" *Id.* at 5 (emphasis added). Paragraph 8 of the Dissolution Agreement states, "[T]he parties shall be satisfied in full and final *settlement of all claims arising from the employment agreement,* so that neither party may claim anything more from the other party." *Id.* (emphasis added). While Defendants claim that these provisions encompass any claims by ELS AG or Enzo, they have not shown that, under Swiss laws of contract construction, these provisions of the Dissolution Agreement release Dettwiler for any claims brought by ELS AG's parent company Enzo. Furthermore, Defendants have neither shown that the Dissolution Agreement released Dettwiler from the non-competition clause in the Stock Purchase Agreement, nor that the tort claims brought by Enzo against Dettwiler are claims "arising from the employment agreement."

Defendants cite only Delaware cases addressing the parties' intent or validity of a release under Delaware and federal law. (D.I. 151 at 12-13); *Fox v. Rodel, Inc.,* 1999 WL 588293, at *5 (D. Del. July 14, 1999) (applying the substantive law of Delaware to the construction of a release agreement); *Roberts v. Comcast Cable Co.,* 2004 WL 1887487, at *7 (D. Del. Aug. 23, 2004) (holding that a general release constituted a waiver of Title VII retaliation and state law claims). However, because Swiss law controls the interpretation of the Dissolution Agreement, these cases are irrelevant.

Regarding the second argument, that neither ELS AG nor Enzo rescinded the Dissolution Agreement, Defendants cite in their initial brief to their own Statement of Undisputed Facts, which

6

states, "There has been no valid rescission of Dettwiler's Dissolution Agreement, including the release of claims provided in paragraphs 5 and 8, as Plaintiff has made no such application for a rescission of the agreement in accordance with Swiss law." (D.I. 151 at 13; D.I. 150 at 3). However, Plaintiff's opposition brief does dispute the validity of the Dissolution Agreement. (D.I. 157 at 13). Plaintiff claims that Article 31 of the Swiss Code of Obligations gives a party one year to declare a contract non-binding if the party was influenced by error or deception. *Id.* Plaintiff provides a letter, dated October 6, 2011, purporting to declare relevant portions of the Dissolution Agreement non-binding. (D.I. 158, Ex. B at 3).

In response to Plaintiff's contention, Defendants claim that ELS AG raised the allegations that are now the subject to this suit during negotiations regarding the Dissolution Agreement, and therefore, the Dissolution Agreement was not entered into under material error and remains binding. (D.I. 163 at 1). In support of their position, Defendants provide an affidavit from Dettwiler's Swiss counsel, Dr. Balthasar Bessenich, who asserts that Dettwiler's activities, which are now the basis of this litigation, were discussed during the negotiations. (D.I. 163-1 at 2). Defendants also assert that the Dissolution Agreement remains binding because Article 67 of the Swiss Code of Obligations required ELS AG to file a claim for restitution within one year of discovering the alleged error or deception. (D.I. 163 at 1-2). In support of this argument, Defendants provide what is purported to be the "leading case" from the Swiss Federal Court holding that if a party claiming error or duress fails to file a claim for restitution within one year, then a contract is deemed ratified. (D.I. 163-1 at 3; Ex. 2; D.I. 164). The case provided states, "The purchaser *can* demand a refund of the price according to the provisions regarding unjustified enrichment *if the contract turns out to have been non[-]binding on him on account of error.*" (D.I. 164 at 8) (emphasis added).

7

First, there is genuine question of fact whether the Dissolution Agreement was entered into under error or deception, or whether Plaintiff was aware of Dettwiler's alleged activity when the parties entered into the Dissolution Agreement. Defendants' sole evidence is Bessenich's affidavit. (D.I. 163 at 1; D.I. 163-1 at 1-2). However, Defendants never disclosed Bessenich as a witness in this litigation nor as an expert in Swiss law, and the affidavit from Bessenich was only submitted to the Court on July 30, 2014, after the briefing on the motion. (D.I. 170 at 1; D.I. 163 at 1; D.I. 163-1 at 1-2). Therefore, because of the timing of Bessenich's affidavit, Plaintiff has had no opportunity to refute Bessenich's assertions or to provide contrary evidence. (D.I. 170 at 1). Therefore, the Court cannot rely on Bessenich's affidavit for any purpose.

Second, questions remain whether ELS AG properly declared the relevant portions of the Dissolution Agreement non-binding, or whether Swiss law required ELS AG to file a claim for restitution in order for the Dissolution Agreement to be non-binding. Defendants rely on the opinion of Bessenich regarding Swiss law and the precedential value of the provided Swiss case. (D.I. 163-1 at 3-4). Again, the Court cannot rely on Bessinich's opinion; nor can the Court rely on the citation to single case from a foreign court with which this Court is wholly unfamiliar. Furthermore, the Court reads the Swiss case and the relevant provisions of the Swiss Code of Obligations differently than Defendants. The Swiss law seems to draw a distinction between declaring a contract non-binding under Article 31 of the Swiss Code of Obligations, cited by Plaintiff, and the provisions for seeking restitution, cited by Defendants. (D.I. 164 at 8). Regardless, the Court has not been provided with sufficient evidence regarding Swiss law to properly understand the Swiss code or the cited case. Thus, the Court is unable to determine as a matter of law whether the Dissolution Agreement is, or remains, binding.

Therefore, Defendants are not entitled to summary judgment with respect to their contention that Dettwiler was released from the claims asserted against her.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment regarding the claims against Silvia Dettwiler (D.I. 149) is **DENIED**.

Entered this 6th day of August, 2014.

*Richard G. Andrews*
United States District Judge